**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SA CV 18-0623-DOC (JDEx) | Date: June 20, 2018 |

Title: DONALD KARN V. BAYVIEW LOAN SERVICING, LLC ET AL

PRESENT:

**THE HONORABLE DAVID O. CARTER, JUDGE**

| Deborah Lewman | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |
| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**    **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [8]**

Before the Court is Plaintiff Donald Karn's ("Karn" or "Plaintiff") Motion to Remand ("Mot.") (Dkt. 8). The Court finds this matter suitable for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. Having reviewed the papers and considered the parties' arguments, the Court GRANTS Plaintiff's Motion.

**I.   Background**

    **A.   Facts**

The Court draws the facts as set out in Plaintiff's Complaint. *See* Notice of Removal ("Not. Rem.") (Dkt. 1) Ex. 1 (Complaint ("Compl.")).

Plaintiff Karn is an individual who resides in Orange County, California and is the owner of property at 33801 Glocamora Ln., San Juan Capistrano, California, 92675 ("Home"). Compl. ¶ 1. Defendant Bayview Loan Servicing, LLC ("BLS" or "Defendant") is a Delaware limited liability company and was conducting business in Orange County, California. *Id.* ¶ 2. Plaintiff is ignorant of the true names and capacities of the defendants sued as DOES 1 to 20 inclusive, and therefore, sues these defendants by such fictitious names. *Id.* ¶ 3. Plaintiff alleges that each defendants designated as DOE

was and is responsible, liable, and/or obligated to Plaintiffs in some manner for the events, occurrences, happenings, and transactions alleged, and that Plaintiffs' damages as alleged were proximately caused by these defendants. *Id.* ¶ 4.

Plaintiff alleges that in 2016, "Plaintiff's loan was service released," or transferred, from Select Portfolio Servicing Inc. to BLS. *Id.* ¶ 6. In January 2017, Plaintiff contacted BLS about modifying his Home mortgage loan. *Id.* BLS's representative told Plaintiff that they would consider him for a loan modification if he sent in an application. *Id.* The representative stated that as long as Plaintiff was diligent in providing the documents or during pending review of changing financial circumstances, BLS would not foreclose on his home. *Id.* ¶ 7. Plaintiff and the representative discussed the loan modification process, at the end of which Plaintiff was informed that he prequalified for an internal program. *Id.* Therefore, on February 9, 2017, Plaintiff faxed to BLS his completed loan modification application, and also called BLS to discuss the application. *Id.* ¶ 8.

Despite Plaintiff having sent in an initial loan modification, being prequalified, sending a completed loan modification application, and being under review, BLS continued with its foreclosure efforts and refused to work with Plaintiff to help him save his home. *Id.* ¶ 9. Throughout this process, Plaintiff alleges he has been in good faith negotiations for loss mitigation. *Id*. ¶ 11. BLS assigned Plaintiff a single point of contact ("SPOC") who would not respond to Plaintiff's inquiries. *Id.* ¶ 11–12. Plaintiff alleges Defendant failed to act in good faith and that Plaintiff was never given a decision on his application. *Id.* ¶ 13.

Plaintiff further alleges that during the review of the completed application, Defendant was dual tracking (the lenders' practice of negotiating with homeowners in default on their loans for a loan modification, while simultaneously advancing the foreclosure process). *Id.* ¶ 14.

BLS continued to schedule foreclosure sale dates, despite Plaintiff having submitted a completed loan modification application. *Id.* ¶¶ 18–19. In February 2018, Plaintiff received a Notice of Trustee's Sale ("NOTS") scheduled for March 5, 2018. *Id*. ¶ 19.

**B.     Procedural History**

On February 26, 2018, Plaintiff filed his Complaint in the Superior Court of California, County of Orange. *See* Compl. On April 16, 2018, Defendant removed the case to this Court based on diversity jurisdiction. *See* Not. Rem. Plaintiff brings claims

for: (1) violation of homeowner's bill of rights, California Civil Code § 2923.6(c); (2) negligence; (3) violation of California Business & Professional Code § 17200; (4) intentional misrepresentation; (5) negligent misrepresentation; and (6) promissory estoppel. Compl. ¶¶ 15–61.

On May 16, 2018, Plaintiff filed the instant Motion. On May 25, 2018, Defendant opposed ("Opp'n") (Dkt. 10), accompanied by the Declaration of Neil Cooper ("Cooper Decl.") (Dkt. 11), Declaration of Bayview Loan Servicing ("BLS Decl.") (Dkt. 12), and a Request for Judicial Notice ("RJN") (Dkt. 13). Plaintiff did not file a Reply.

## II.　Request for Judicial Notice

Defendant requests that the Court take judicial notice of the following document, attached as Exhibit B to the RJN, pursuant to Federal Rule of Evidence 201:

- Schedule D in *In re Donald Karn*, C.D. Cal. Bankr. Case No. 8:18-bk-10749

RJN. Plaintiff did not oppose this request.

The Court may take judicial notice of court filings and other matters of public record. Fed. R. Evid. 201(b); *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998). It is improper, however, for a court to take judicial notice of the veracity of a public document's contents when the parties dispute the meaning and truth of the contents. *Lee v. City of L.A.*, 250 F.3d 668, 689–90 (9th Cir. 2001) (reversing a district court's granting of a motion to dismiss where the court not only took judicial notice of undisputed matters of public record but also took judicial notice of "disputed facts stated in public records" and relied on the validity of those facts in deciding the motion to dismiss).

Since this document is a court filing of public record, the Court takes judicial notice of this document. *See City of Burbank*, 136 F.3d at 1634.

## III.　Legal Standard

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Removal of a case from state court to federal court is governed by 28 U.S.C. § 1441, which provides in pertinent part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is

pending." 28 U.S.C. § 1441. A federal court may order remand for lack of subject matter jurisdiction or any defect in the removal procedure. 28 U.S.C. § 1447(c).

A federal court has diversity jurisdiction if: (1) the controversy is between "citizens of different States," and (2) the amount in controversy exceeds the sum or value of $75,000. 28 U.S.C. § 1332(a). Diversity jurisdiction requires complete diversity, meaning that no plaintiff can be from the same state as a defendant. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 679 (9th Cir. 2006).

In determining the amount in controversy, courts first look to the complaint. Generally, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) (footnote omitted). In cases in which the existence of diversity jurisdiction depends on the amount in controversy, "[t]he district court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy." *Singer v. State Farm Mutual Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326 (5th Cir. 1995)). A speculative argument regarding the potential value of the award is insufficient. *Id.* at 376; *Gaus v. Miles*, 980 F.2d 564, 567 (9th Cir.1992). The amount in controversy includes claims for general and special damages (excluding costs and interests), including attorney's fees, if recoverable by statute or contract, and punitive damages, if recoverable as a matter of law. *See Richmond v. Allstate Ins. Co.*, 897 F.Supp. 447 (S.D. Cal. 1995); *Miller v. Michigan Millers Ins. Co.*, 1997 WL 136242 (N.D.Cal.1997).

## IV. Discussion

Defendant removed this action on the basis of diversity jurisdiction. *See* Not. of Rem. Plaintiff does not contest the diversity of the parties. *See* Mot. Rather, Plaintiff argues that Defendant has not established that the amount in controversy exceeds $75,000. *Id.* at 6. Plaintiff argues that his complaint did not specify any particular amount of damages beyond $25,000, and that Defendant cannot prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Id.* at 6–7. Plaintiff argues that the Complaint does not seek to rescind the loan, but instead seeks unspecified damages under state law claims, and that neither the value of the loan nor the property provides the value of the "object of litigation," and that thus Defendant has not proved that the amount in controversy requirement is satisfied. *Id.*

Under recent Supreme Court precedent, the allegations in a defendant's notice of removal that the amount in controversy exceeds the jurisdictional threshold need only be "plausible." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554

(2014). If the plaintiff has not clearly or unambiguously alleged $75,000 in its complaint or has affirmatively alleged an amount *less* than $75,000 in its complaint, once the plaintiff challenges removal the burden lies with the defendant to show by a preponderance of the evidence that the jurisdictional minimum is satisfied. *Id.*; *see also Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106–07 (9th Cir. 2010); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2008).

While the defendant must "set forth the *underlying facts* supporting its assertion that the amount in controversy exceeds the statutory minimum," the standard is not so taxing as to require the defendant to "research, state, and *prove* the plaintiff's claims for damages." *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) (emphasis added). In short, the defendant must show that it is "more likely than not" that the amount in controversy exceeds the statutory minimum. *Id*. Summary judgment-type evidence may be used to substantiate this showing. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090–91 (9th Cir. 2003); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). For example, defendants may make mathematical calculations using reasonable averages of hourly, monthly, and annual incomes of comparable employees when assessing the amount in controversy in a wrongful termination suit. *Coleman*, 730 F. Supp. 2d. at 1148–49.

Here, Defendant claims that the amount in controversy includes claims for exemplary and punitive damages, economic and non-economic damages, attorney's fees and experts' fees, and an order prohibiting the foreclosure of the subject property, including "for Defendant to rescind all Notices of Default." Opp'n at 3; *See* Compl. Prayer. Defendant contends that the action concerns a "$968,000 loan that is hundreds of thousands of dollars in default and secured by property that is in the range of $1.5 million and the amount in controversy exceeds $75,000." Opp'n at 3. Plaintiff is correct, however, that "when a plaintiff does not seek to rescind the loan at issue, but instead seeks damages in an unspecified amount under claims such as breach of fiduciary duty, negligence . . . and intentional infliction of emotional distress, the amount of controversy is not properly gauged by the loan amount." *See Vonderscher v. Green Tree Servicing, LLC*, No. 2:13-CV-00490-MCE, 2013 WL 1858431, at *3 (E.D. Cal. May 2, 2013); *Quiroga v. Bank of America, N.A.*, No. EDCV151163MWFKKX, 2015 WL 4747978, at *3 (C.D. Cal. Aug. 10, 2015); Mot. at 7. Plaintiff does not seek to rescind the loan but seeks damages in an unspecified amount under state law claims, such as intentional misrepresentation, negligent misrepresentation, and promissory estoppel. Mot. at 7. Thus, "the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce." *In re Ford Motor Co./Citibank (South*

*Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001) (citing *Ridder Bros. Inc., v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944)).

Even without taking into account the loan amount, Defendant assert that damages should be calculated as follows. First, Defendant takes the value of Plaintiff's equity for his Home, estimated to be approximately $26,000. Opp'n at 3. Then, Defendant claims that Plaintiff's prayer for equitable relief, "including an order to rescind all Notices of Default" is "calculated by either the benefit to the borrower or the cost to the defendant." Compl. at 15; *see also* Opp'n at 4. Defendant calculates the value of an injunction against foreclosure as the amount of Plaintiff's regular monthly payment of $8,291.16. *See* BLS Decl. ¶ 4, Ex. C, D; Opp'n at 4. Defendant contends that if Plaintiff succeeds in having the Notices of Default rescinded, any foreclosure could not occur for at least five months, likely longer, and could potentially last indefinitely. *See* Opp'n at 4–5; Cal. Civ. Code §§ 2924(a)(2)–(3) (three months must elapse between the filing of notice of default and notice of sale); 2924f(b)(1) (no less than 20 days between posting of notice of sale and sale). *Id.* Thus, Defendant calculates that the very minimum value of equitable relief exceeds $41,000 ($8,29.16 x 5 (months) = $41,455.80). *Id.* Therefore, Defendant contends, the economic damages from the loss in equity of $26,000 and the $41,000 minimum for equitable relief is only $8,000 shy from reaching the federal limit of $75,000. Thus, Defendant claims that, based on these calculations, the absolute minimum of the amount in controversy is $67,000. *Id.* Defendant claims that a 5-month timeline is "unrealistically abbreviated" and "were Plaintiff to succeed, it could be years before foreclosure." *Id.* at 4. Thus, Defendant argues that another month of delay in the foreclosure would push this amount to beyond $75,000. *See id.*

In addition, Defendant contends that Plaintiff's prayer for other economic and non-economic damages from damaged credit, punitive damages, and attorney's fees for both incurred and future litigation will easily exceed the additional $8,000 remaining to meet the jurisdictional limit for the amount in controversy. Opp'n at 5; *see Bank of America Nat. Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972) (in an action by a single plaintiff against a single defendant, the value of all claims are aggregated to calculate the amount in controversy). The amount in controversy may include punitive damages if recoverable under state law. *Davenport v. Mutual Ben. Health & Acc. Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963); *see Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1009 (N.D. Cal. 2002). Under California Civil Code § 3294, punitive damages are an available remedy for intentional misrepresentation. Defendant does not provide evidence of the amount of punitive damages that juries award in cases analogous to this one. Rather, Defendant contends these damages are available and could, in theory, be substantial. This is not enough, however, because "conclusory

allegations as to the amount in controversy are insufficient." *Matheson*, 319 F.3d at 1090–91 (citing *Gaus*, 980 F.2d at 567). Moreover, allowing defendants to claim that the amount in controversy includes a significant calculation of punitive damages, simply because such punitive damages might be available by law, could erode the jurisdiction of state courts. As a result, the Court rejects this argument.

　　As for attorney's fees, district courts in the Ninth Circuit "are split as to whether a court should consider only attorneys' fees incurred as of the time of removal or fees reasonably likely to be incurred after the date of removal." *Bigby v. DS Waters of Am. Inc.*, 2013 WL 394876, at *7 (C.D. Cal. Jan. 30, 2013); (citations omitted); *compare Reames v. AB Car Rental Servs., Inc.*, 899 F. Supp. 2d 1012, 1016 (D. Or. 2012) (measuring attorney's fees incurred as of the time of removal), *with Brady*, 243 F. Supp. 2d at 1010–11 ("A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy."). The Court finds the reasoning in *Reames* to be persuasive, because diversity jurisdiction is a limited grant of jurisdiction, although the Ninth Circuit has not clarified this issue to date.

　　In sum, even assuming that Defendant has established that the equitable relief is worth $41,000—because of uncertainty in the amount of punitive damages, uncertainty in the amount of damages from damaged credit, and the limited attorney's fees incurred at the time of removal—Defendant has failed to establish through a preponderance of evidence that the amount in controversy will be greater than $75,000.

　　Accordingly, the Court GRANTS Plaintiff's Motion to Remand.

## V.　　Disposition

　　For the foregoing reasons, the Court REMANDS this action to the Superior Court of California, County of Orange.

　　The Clerk shall serve this minute order on the parties.